UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-01001-CAS(AFMx) | Date | May 23, 2016 |
| Title | TAHAYA MISR INVESTMENT, INC. v. HELWAN CEMENT S.A.E., et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Louis Shoch, III | Lorenzo Gasparetti |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS (Dkt. 32, Filed April 25, 2016)

## I. INTRODUCTION

Plaintiff Tahaya Misr Investment, Inc., filed the instant action on December 29, 2015 in Los Angeles County Superior Court against defendants Helwan Cement S.A.E. ("Helwan"), Suez Cement Company ("SCC"), and Italcementi Group ("Italcementi") (collectively, "Defendants"). Dkt. 1. On February 12, 2016, defendants removed this action to this Court on the basis of diversity jurisdiction. Dkt. 1. The complaint asserts claims against defendants for breach of contract and breach of the implied covenant of good faith and fair dealing. Id. In brief, plaintiff alleges that it had an agreement with defendants to serve as defendants' exclusive sales agent for cement sales outside of Egypt and that it is owed unpaid sales commissions, and interest thereon, pursuant to the parties' agreement.

On February 19, 2016, defendants Helwan and SCC filed a motion to dismiss the complaint as to defendant SCC for lack of personal jurisdiction. Dkt. 8, Mot. On March 9, 2016, the Court granted this motion without prejudice. Dkt. 15. Thereafter, on April 8. 2016, plaintiff filed a First Amended Complaint ("FAC"). Dkt. 22. Defendants SCC and Italcementi (the "moving defendants") now move to dismiss this action for lack of personal jurisdiction. Dkt. 32. On May 3, 2016, plaintiff filed an opposition to this motion, Dkt. 33, and on May 9, 2016, SCC and Italcementi filed a reply, Dkt. 37.[1]

[1] Plaintiff initially contended that it was in possession of additional documentary evidence that further supported the Court's exercise of jurisdiction over SCC and Italcementi. Opp'n., at 7. Plaintiff contended that this evidence was held in Egypt and

Having carefully considered the parties’ arguments, the Court finds and concludes as follows.

## II. BACKGROUND

In the FAC, plaintiff alleges the following facts: Around March 6, 2002, plaintiff entered into an “Exclusive Agency Agreement” (the “Agreement”) with defendant Helwan. FAC ¶ 17. The Agreement provided, in relevant part: (1) that plaintiff would serve as Helwan’s sales agent for cement sales outside of Egypt; (2) that Helwan would pay plaintiff a commission of $2.00 (USD) for every ton of cement sold outside of Egypt, regardless of whether plaintiff was involved in the particular transaction; and (3) that Helwan’s would pay plaintiff’s commissions within ten days of Helwan’s receipt of payment from its customer, and that any delay in a commission payment would be subject to a charge of 1% compound interest per week. Id. The Agreement was for a five-year term, which would automatically renew unless either party provided notice of an intent to terminate the agreement three months prior to the end of the term. Id. Plaintiff alleges that neither party to the Agreement provided notice of an intent to terminate the Agreement prior to the end of the first five-year term, in 2007, or prior to the end of the second five-year term, in 2012. Id. ¶ 18.

Plaintiff now alleges that Helwan has breached the Agreement by failing to pay plaintiff’s commissions on over eight million tons of cement sold by Helwan outside of Egypt. Id. ¶ 20. Plaintiff contends that the value of these commission is over seventeen million dollars and that, when the Agreement’s interest provision are accounted for, plaintiff’s contractual damages exceed three billion dollars. Id. ¶¶ 20-22.

---

Italy and that, in light of an unspecified holiday in Egypt, it was unable to procure those documents in time to respond to the instant motion to dismiss. Id. However, on May 9, 2016, plaintiff submitted two declarations with numerous accompanying documents. SCC and Italcementi object to these documents on the grounds that they were untimely produced (plaintiff submitted these documents to the Court the same day defendants’ reply was due). However, the Court has considered these documents and finds that they do not alter the Court’s conclusion that jurisdiction is not appropriate over SCC and Italcementi.

In addition to Helwan, plaintiff names as defendants in this action SCC, which plaintiff alleges “owns more than 99% of the outstanding shares” of Helwan, and Italcementi, which plaintiff alleges “owns approximately 54% of the outstanding shares” of SCC. Id. ¶¶ 3-4. On April 25, 2016, Helwan filed an answer to the SAC. Dkt. 30. SCC and Italcementi now move to dismiss this action for lack of personal jurisdiction.

## III. LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff’d, 248 F.3d 915 (9th Cir. 2001). Plaintiff’s version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties’ affidavits must be resolved in plaintiff’s favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant submits evidence controverting the allegations, however, the plaintiff may not rely on its pleadings, but must “come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.” Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int’l, Inc., 551 F.2d 784, 787 (9th Cir.1977)).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state’s long-arm statute and (2) the “exercise of that jurisdiction does not violate federal due process.” Pebble Beach, 453 F.3d at 1154-55 (citing Fireman’s Fund Ins. Co. v. Nat’l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California’s long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment’s Due Process Clause requires that a defendant have “minimum contacts” with the forum state so that the exercise of jurisdiction “does not offend traditional notions of fair play and substantial justice.” Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending

on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475-76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and must do so to establish specific jurisdiction. Schwarzenegger, 374 F.3d at 802.

If the plaintiff establishes the first two prongs, then it is the defendant’s burden to “present a compelling case” that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the “extent of the defendant’s purposeful injection into the forum”; (2) the burdens on defendant from litigating in the forum state; (3) the “extent of conflict with the sovereignty of the defendant’s state,” (4) the forum state’s “interest in adjudicating the dispute”; (5) the “most efficient judicial resolution of the controversy”; (6) the “importance of the forum to the plaintiff’s interest in convenient and effective relief”; and (7) the existence of an alternative forum. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995).

## IV. ANALYSIS

SCC and Italcementi move to dismiss this action for lack of personal jurisdiction. “Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.” Shwarzenegger, 374 F.3d at 800. For the following reasons, the Court finds that plaintiff has failed to make even a *prima facie* showing that personal jurisdiction is appropriate over either of these defendants.

### A. General Jurisdiction

A court has general jurisdiction over a nonresident defendant when that defendant’s activities within the forum state are “substantial” or “continuous and systematic,” even if the cause of action is “unrelated to the defendant’s forum activities.” Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952). Where the defendant is a corporation, such as SCC and Italcementi, general jurisdiction is only appropriate where “that corporation’s affiliations with the State are so ‘continuous and systematic’ as to render [it] essentially at home in the forum State.” Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014). The “paradigm” forum for general jurisdiction over a corporation is the forum where the corporation is incorporated or where its principal

place of business is located. Goodyears Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2854-55 (2011).

Here, plaintiff concedes that SCC is “an Egyptian corporation, with its principal place of business in Cairo, Egypt.” Compl. ¶ 3. Furthermore, SCC represents that it has no agent, no offices, no employees, no property, nor any bank accounts within California. Carre Decl. ¶ 4. Likewise, plaintiff acknowledges that Italcementi is “an Italian corporation, with its principal place of business in Bergamo, Italy.” FAC ¶ 4. And Italcementi represents that it is not registered to do business in California, does not have any offices, facilities, or employees in California, and does not maintain any corporate bank accounts or own any real property in California. Nuzzolo Decl. ¶ 3. Accordingly, the Court finds that general jurisdiction is not appropriate in this Court over either SCC or Italcementi.

**B. Specific Jurisdiction**

“Under specific jurisdiction, a court may assert jurisdiction for a cause of action that arises out of the defendant’s forum-related activities.” Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). Here, plaintiff’s claims all arise out of Helwan’s purported breach of the Agreement. However, neither SCC nor Italcementi was a party to the Agreement and neither of these defendants had any involvement with the negotiation or execution of the Agreement. See Carre Decl. ¶ 5; Nuzzolo Decl ¶¶ 4, 6. In fact, SCC and Itaclementi represent that they did not even hold an ownership interest in Helwan until 2005—more than 3 years *after* the Agreement was executed. Carre Decl. ¶ 5; Nuzzolo Decl ¶ 6.

Nonetheless, it appears that plaintiff is attempting to subject these defendants to personal jurisdiction in this Court by virtue of their relationship with their subsidiary—Helwan. A parent company may, in certain circumstances, become subject to personal jurisdiction on the basis of the conduct of one of its subsidiaries. However, the mere existence of a relationship between a parent company and its subsidiaries “is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries’ minimum contacts with the forum.” Unocal Corp., 248 F.3d at 925. Rather, a plaintiff may impute a subsidiary’s minimum contacts with a forum onto the parent company under an “alter ego theory” by showing that they are “not really separate

entities.” Ranza v. Nike, Inc., 793 F.3d 1059, 1071 (9th Cir. 2015) (quoting Unocal, 248 F.3d at 926). To satisfy the alter ego theory, “a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.” Ranza, 793 F.3d at 1073.

A plaintiff may establish the first prong of this test with “a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.” Id. But, “[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control.” Id. (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003)). Indeed, the plaintiff’s burden on this point is high; even a showing that the parent is “involved directly in decision-making” with the subsidiary is insufficient. Unocal, 248 F.3d at 927-23 (finding no unity of interest where a parent company was involved in forming the subsidiary’s business plan, provided loans to the subsidiary, and shared some managers and officers with the subsidiary); see also Harris Rutsky, 328 F.3d at 1135 (“Such activity might well be properly characterized as . . . control over day-to-day activities. Standing by itself, however, it is not enough to meet the alter ego or agency tests.”).

Here, both SCC and Italcementi represent that they are separate legal entities from Helwan and that all three companies observe proper corporate formalities. For example, SCC and Italcementi declare that they and Helwan have separate boards of directors and hold separate board and general shareholder meetings. Carre Decl. ¶ 7; Nuzzolo Decl. ¶ 8. Likewise, the moving defendants declare that each of SCC, Italcementi, and Helwan is adequately capitalized to maintain its holdings, that each company owns and leases its own facilities, and that each company files its own tax returns and pays its own taxes. Carre Decl. ¶¶ 9, 11; Nuzzolo Decl. ¶¶ 9,11-12. And, while SCC and Italcementi acknowledge that there is some overlap between the boards of directors of the three companies and that SCC and Italcementi are involved in the macromanagement of Helwan, both companies declare that they do not “dictate every facet of . . . Helwan’s business, including routine matters of day-to-day operation.” Carre Decl. ¶ 6; Nuzzolo Decl. ¶ 7. To the contrary, Helwan enters into contracts on its own behalf, manufactures its own products, and markets those products directly to customers. Carre Decl. ¶¶ 12-13; Nuzzolo Decl. ¶ 13.

Nevertheless, plaintiff identifies several pieces of evidence that it contends support the exercise of jurisdiction over SCC and Italcementi under an alter ego theory. However, the vast majority of the evidence plaintiff relies upon is the type of proof numerous courts, including the Ninth Circuit, have found insufficient to confer jurisdiction under an alter ego theory. For example, plaintiff places great emphasis on the fact that SCC and Italcementi own a controlling interest in Helwan and that several employees of SCC and Italcementi have served in management roles and on the board of directors at Helwan. However, the Ninth Circuit has expressly held that “[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control” for jurisdiction purposes. Ranza, 793 F.3d at 1073.[2]

Likewise, plaintiff notes that Italcementi has prepared consolidated financial statements for itself, SCC, and Helwan and that in various documents and internet publications all three defendants refer to themselves as a group. However, it is a standard business practice in many industries for a parent company to prepare consolidated financial statements on behalf of its subsidiaries. See also Unocal Corp., 248 F.3d at 929 (refusing to consider facts from parent company’s annual reports because “consolidating the activities of a subsidiary into the parent’s reports is a common business practice.”); Calvert v. Huckins, 875 F. Supp. 674, 679-80 (E.D. Cal. 1995) (“[C]onsolidating the activities of a subsidiary into the parent’s annual reports is a common business practice. It is allowed by both the Internal Revenue Service and the Securities and Exchange Commission, and it is recommended by generally accepted accounting principles.”). And courts have found that simply referring to a parent and subsidiary collectively or as a common enterprise is insufficient to demonstrate an alter ego relationship. See, e.g., Moody v. Charming Shoppes of Delaware, Inc., 2008 WL 2128955, at *4 (N.D. Cal. May

[2] Plaintiff also contends that it is significant that SCC, Italcementi, and Helwan are represented by the same outside counsel (Reed Smith LLP) in this action. But plaintiff cites no legal authority holding that hiring the same outside counsel is proof of an alter ego relationship. And it is hardly surprising given the overlap of issues relevant to the three defendants that they would elect to share legal counsel in this matter. Plaintiff also alleges, without any support, that SCC and Helwan “share internal legal counsel.” Opp’n., at 6. However, even assuming that this is true, it is only another example that SCC and Helwan share some internal management personnel. The Court has already explained that this is insufficient to establish that Helwan is the alter ego of SCC.

20, 2008) (“collective references in press releases do not establish in personam jurisdiction.”); Bellomo v. Penn. Life Co., 488 F. Supp. 744, 745 (S.D.N.Y. 1980) (holding fact that “annual reports describe the business of the parent, subsidiaries and sub-subsidiaries as if they were all part of a common enterprise” did not permit parent and subsidiary to be treated as the same entity for jurisdictional purposes); F. Hoffman-La Roche, Inc. v. Superior Court, 130 Cal. App. 4th 782, 801 (Cal. Ct. App. 2005) (“The evidence here of joint reporting or collective media releases did not go beyond th[e] normal incidence of ownership that is contemplated within the parent/subsidiary context. Accordingly, this evidence does not subject the Swiss defendants to the exercise of jurisdiction.”).

Plaintiff also contends that SCC and Italcementi use Helwan as their sales and marketing arm in Egypt and, on occasion, direct the budgeting and other business decisions of Helwan. However, this evidence simply demonstrates that the three companies share a close relationship. In fact, SCC acknowledges that “some support functions are organized and coordinated between SCC and its subsidiaries, including Helwan,” but it explains that this is done “with the aim of disseminating best practices and achieving synergies for the benefit of each separate company.” Carre Decl. ¶ 14. SCC further explains that these support services are governed by a “separate services agreement properly executed between the different corporate entities.” Id. And, in any event, the mere fact that a parent coordinates its efforts with its subsidiary does not establish that the subsidiary is the alter ego of the parent. See also Harris Rutsky, 328 F.3d at 1135 (“Such activity might well be properly characterized as . . . control over day-to-day activities. Standing by itself, however, it is not enough to meet the alter ego or agency tests.”).

In addition, plaintiff alleges without any proof that Italcementi has used and continues to use Helwan, SCC, and the assets of these entities for its own purposes. However, plaintiff identifies no specific examples to support this claim and conclusory allegations such as this are insufficient to establish an alter ego relationship. See also Kingsburg Apple Packers, Inc. v. Ballantine Produce, 2010 WL 2817056, at *5 (E.D. Cal. 2010) (“[Plaintiff-intervenor’s] allegations are insufficient to plead an alter ego relationship because they are conclusory and merely recite the factors that a court considers in evaluating alter ego claims.”) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

Finally, plaintiff alleges that “[t]here is and has been a failure to maintain arms length[] transactions between Defendants and Defendants have held themselves out as being responsible for one another’s debts.” FAC ¶ 11. In particular, plaintiff identifies a loan transaction in which it appears that Helwan attempted to obtain a line of credit from an Egyptian bank. Id. SCC participated in this transaction and both Helwan and SCC were represented by Bruno Carre—a board member of both SCC and Helwan. Id. Plaintiff alleges that, in the course of this transaction, SCC represented that it would be the “sponsor” for the transaction and would receive a commission of 1.5%. Id. Plaintiff contends that this is proof that Helwan is the alter ego of SCC and, potentially, Italcementi. The Court disagrees.

First, SCC and Italcementi dispute that this transaction occurred and contend that all transactions, including loan transactions, between SCC, Italcementi, and/or Helwan are conducted at arms-length, entered into by each company on its own behalf, and supported by adequate documentation and consideration. Indeed, even plaintiff appears to concede that SCC received consideration in the alleged transaction in the form of a commission of 1.5%. See also Sonora Diamond Corp. v. Super. Ct., 83 Cal. App. 4th 523, 547-48 (2000) (finding no unity of interest between the two companies where “all financial transactions between Diamond and Sonora Mining were separately recorded, maintained in the records of each, documented as intercompany loans and similar arrangements, and dealt with as legitimate obligations.”). Moreover, even assuming this transaction occurred and in the manner plaintiff alleges, the Court would hesitate to conclude that Helwan was the alter ego of either SCC or Italcementi based on a single event. See also Barantsevich v. VTB Bank, 945 F. Supp. 2d 972, 984 (C.D. Cal. 2013) (“In determining whether personal jurisdiction over a parent company exists due to its subsidiary’s contacts, there is a general presumption in favor of respecting the corporate entity.”) (citations omitted); Calvert, 875 F. Supp. at 678 (“Disregarding the corporate entity is recognized as an extreme remedy”). Finally, the Court notes that, when faced with similar evidence, the Ninth Circuit has declined to find an alter ego relationship. See, e.g., Compagnie Bruxelles Lambert, 94 F.3d at 591 (finding no alter ego relationship was created where, among other things, the parent company guaranteed loans for the subsidiary); Unocal Corp., 248 F.3d at 927 (finding no alter ego relationship despite allegations that parent provided “loans and other types of financing to subsidiaries”).

Accordingly, the Court finds that the evidence plaintiff has identified is insufficient to demonstrate that Helwan is the alter ego of either SCC or Italcementi. The Court, therefore, GRANTS SCC and Italcementi's motion to dismiss for lack of personal jurisdiction.[3]

[3] Plaintiff requests the opportunity to conduct jurisdictional discovery. "A district court is vested with broad discretion to permit or deny [jurisdictional] discovery." Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir. 2003). Moreover, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995). Here, plaintiff has come forward with no evidence to suggest that there is a lack of corporate separateness between SCC, Italcementi, and Helwan. To the contrary, all of the evidence produced by plaintiff merely suggests that Helwan is the subsidiary of SCC and Italcementi and that, at most, these companies exercise broad oversight over Helwan's operations. This is insufficient to establish jurisdiction under an alter ego theory. Accordingly, the Court finds that it is unlikely that jurisdictional discovery would produce any evidence to support the exercise of personal jurisdiction over SCC and Italcementi. Moreover, the Court notes that, even if plaintiff could establish a lack of corporate separateness between SCC, Italcementi, and Helwan., in order to satisfy the alter ego theory plaintiff must also show that failure to disregard defendants' separate corporate identities would result in "fraud or injustice." Ranza, 793 F.3d at 1073. In its papers, plaintiff makes no effort to show that failure to disregard SCC and Italcementi's corporate identities would result in fraud or injustice. Moreover, Helwan has already appeared in this case, filed an answer, and is prepared to litigate this action here in California. Thus, even though the Court dismisses SCC and Italcementi for lack of personal jurisdiction, plaintiff may still recover in this action against defendant Helwan. See also Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 959 (N.D. Cal. 2015) (denying jurisdictional discovery where a viable defendant remained before the court). For the foregoing reasons, the Court denies plaintiff's request for jurisdictional discovery.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** SCC and Italcementi's motion to dismiss for lack of personal jurisdiction. SCC and Italcementi are hereby **DISMISSED** from this action.

IT IS SO ORDERED.

| | | |
|---|---|---|
| | 00 : 09 | |
| Initials of Preparer | CMJ | |